UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**JACKELYN ROSA ORTIZ,**

        **Plaintiff,**

v.　　　　　　　　　　　　　　　　　　　　　　Case No:　6:18-cv-2060-Orl-28EJK

**COMMISSIONER OF SOCIAL SECURITY,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability insurance benefits. The Court has reviewed the record, including the administrative law judge's ("ALJ") decision, the administrative record, and the joint memorandum of the parties. After due consideration, the undersigned recommends that the Commissioner's final decision be affirmed.

**I.     BACKGROUND**

Plaintiff was 40 years old on her November 1, 2014, alleged onset date, has at least a high school education, and is able to communicate in English. (Tr. 22, 36.) On December 10, 2014, Plaintiff filed an application for disability insurance benefits, alleging disability due to heart palpitations, mini stroke, mood swings, depression, insomnia, anxiety, iron deficiency anemia, and asthma. (Tr. 71, 102.) The Commissioner denied Plaintiff's claim initially and on reconsideration. (Tr. 82, 108.) After an administrative hearing (Tr. 45–70), the ALJ assigned to the case issued a decision finding Plaintiff not disabled (Tr. 16–44.) The Appeals Council denied Plaintiff's request for review (Tr. 1–8) and Plaintiff now seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.     ALJ'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

An individual is considered disabled and therefore entitled to disability benefits if the person is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In evaluating a disability claim, the Commissioner must use the following five-step sequential analysis:

1. If the applicant is working, the claim is denied.
2. If the impairment is determined not to be severe—i.e., if the impairment or combination of impairments does not significantly limit the individual's physical or mental ability to do basic work—then the claim is denied.
3. If the impairment or combination of impairments meets or medically equals one of the specific impairments listed in the regulations, then the claimant is entitled to disability benefits. If not, then the Commissioner proceeds to step four.
4. If the claimant has the residual functional capacity ("RFC") to perform past work, then the claim is denied.
5. If the claimant cannot perform past work, then the Commissioner must determine whether there is substantial work in the economy that the claimant can perform. If so, the claim is denied.

*See* 20 C.F.R. §§ 416.920–416.976.

At step one, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date of November 1, 2014. (Tr. 25.) At step two, the ALJ found that Plaintiff had the following severe impairments: mild mitral and tricuspid valve regurgitation and pulmonary

hypertension, asthma, status post left ankle injury with corrective surgery, obesity, anemia, migraine headaches, anxiety disorder, panic disorder, and major depressive disorder. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in the regulations. (*Id.*) Before proceeding to step four, the ALJ determined that Plaintiff had the RFC to

> [p]erform a reduced range of light work as defined in 20 CFR 404.1567(b). She can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently; she can sit, stand, or walk for up to six hours each in an eight-hour workday; she can occasionally operate foot controls with left foot; she can occasionally climb ramps or stairs; she can never climb ladders, ropes, or scaffolds; she can frequently balance; she can occasionally be exposed to dusts, odors, fumes, or pulmonary irritants; she can occasionally be exposed to extreme heat; she can occasionally be exposed to hazards in the workplace, such as unprotected heights and moving machinery; she is limited to performing simple, routine, and repetitive tasks; she can make simple work-related decisions; and she can have occasional interaction with coworkers, supervisors and the general public.

(Tr. 28–29.) At step four, the ALJ concluded that Plaintiff was unable to perform past relevant work as a retail store cashier. (Tr. 36.) However, the ALJ ultimately concluded at step five that considering the Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*) Such jobs include officer helper, laundry sorter, and mail sorter. (Tr. 37.)

### III. SCOPE OF JUDICIAL REVIEW

On judicial review, a Court may determine only whether the ALJ correctly applied the legal standards and whether the ALJ's findings are supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)). A Court may "not reweigh the evidence or substitute [its] own

judgment for that of the agency." *Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 683 (11th Cir. 2019) (citing *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

The Eleventh Circuit defines "substantial evidence" as "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766 (11th Cir. 2019) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir.1997)) A court determines whether substantial evidence exists by considering evidence that is both favorable and unfavorable to the Commissioner's decision. *Lynch v. Astrue*, 358 F. App'x 83, 86 (11th Cir. 2009). "Even if the evidence preponderates against the [Commissioner's] findings, [the Court] must affirm if the [Commissioner's] decision is supported by substantial evidence. *Gibbs v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 799, 800 (11th Cir. 2017) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004)).

## IV.   DISCUSSION

On judicial review, Plaintiff argues that the ALJ committed reversible error when he failed to assign weight to the opinion of Plaintiff's treating physician, Dr. Vivian Charneco, and posed a hypothetical to the Vocational Expert that did not adequately reflect Plaintiff's moderate limitations in concentrating, persisting, and maintaining pace. (Doc. 34 at 10, 22.)

### a. **The ALJ's Failure to Assign Weight to Dr. Charneco's Treatment Notes Does Not Warrant Reversal.**

Dr. Vivian Charneco saw Plaintiff seven times over an eight-month period for treatment of Plaintiff's depression and related mental illnesses. (Tr. 431–32, 509–23.) The treatment notes from the appointments contained information on Plaintiff's chief complaint,[1] medical history, history

---

[1] The July 16, 2015 (Tr. 509), August 13, 2015 (Tr. 511), and November 9, 2015 (Tr. 513) appointments did not include a section about Plaintiff's chief complaint. The February 15, 2015

of present illness, surgical history, family history, social history, allergies, current medications, vitals, mental status exam, diagnosis, and treatment plan.

At the first appointment with Plaintiff on July 10, 2015, Dr. Charneco stated:

> The appearance of [Plaintiff] is appropriate, is neat and clean. Attitude- cooperative; anxiety – normoactive; speech- fluent; affect- appropriate; mood- euthymic; impulsive control- intact at present time; thought patterns- clear; coherent; goal-oriented; thought content- preoccupied about family (has conflicts with her mother), cognition- oriented in time, person and place; poor attention/short term memory; perception- clear; threat to self or others- denies; insight/judgment- fair.

(Tr. 431) (altered for formatting). Dr. Charneco diagnosed Plaintiff with mood disorder, anxiety disorder, and bipolar disorder. (*Id.*) Dr. Charneco also found that "patient does present with symptoms of depression, anxiety, mood swings, irritability, insomnia, which have been affecting the ability to function in family life and interpersonal relationships. Patient will benefit from medication management to help reduce the above-mentioned symptoms." (Tr. 432.)

Dr. Charneco had a follow-up appointment for Plaintiff's medication management (*see* Tr. 432) on July 16, 2015(Tr. 509–10). At the appointment, Dr. Charneco made the following findings in Plaintiff's mental exam:

> General appearance: good hygiene, casually dressed. Doesn't present visual marks on body; interpersonal relation (behavior): calm, cooperative, good eye contact, talkative; psychomotor activity: normal – without any deficits; speech and language: appropriate, clear, normal, with good articulation; mood: euthymic; affect: broad; thought process: logical, coherent, relevant; thought content: within reality appropriate for age; delusions: no delusions reported or observed; hallucinations: denied, doesn't respond to internal stimuli; suicidal: denies suicidal ideation or plan at this time; homicidal: denies homicidal ideations or plan at this time; sensorium (consciousness): alert; orientation: person place situation time oriented to; attention: intact; concentration: intact; memory: immediate recent remote intact; estimate of intelligence (cognition):

---

(Tr. 519) appointment has a section entitled "Chief Complaint," but it states only that Plaintiff came to the appointment for medication management and not a specific complaint.

> average intelligence; impulse control: good; insight: good; judgment: good; patient's capacity to do ADLs:[2] good; attitude toward treatment: cooperative.

(Tr. 510) (alterations in original). Dr. Charneco also diagnosed Plaintiff with major depressive disorder, anxiety disorder, and panic disorder without agoraphobia.[3] (*Id.*)

Dr. Charneco saw Plaintiff for a third time on August 13, 2015 and made the following findings in the mental status exam:

> The appearance of the patient is appropriate, is neat and clean. Attitude: cooperative; activity: normoactive; speech: fluent; affect: appropriate; mood: euthymic; impulse control: intact at present time; thought patterns: clear, coherent, goal-oriented; thought content: preoccupied about family (has conflicts with her mother); cognition: oriented in time, person and place; poor attention/short term memory; perception: clear; threat to self or others: denies; insight/judgment: fair.

(Tr. 511–12) (altered for formatting). Dr. Charneco once again diagnosed Plaintiff with major depressive disorder, anxiety disorder and panic disorder without agoraphobia. (Tr. 512.)

At the appointments on November 9, 2015 and January 4, 2016, Dr. Charneco made identical findings in the mental status exams as the exam from the August 13, 2015 appointment. (*Compare* Tr. 512, 517 *with* Tr. 514.) At both appointments, Dr. Charneco also diagnosed Plaintiff with major depressive disorder, anxiety disorder, and panic disorder without agoraphobia. (Tr. 514.)

---

[2] ADL stands for "activities of daily life." Peter F. Edemekong, Deb L. Bomgaars, Sukesh Sukumaran, Shoshana B. Levy, Activities of Daily Living (ADLs), StatPearls https://www.ncbi.nlm.nih.gov/books/NBK470404/ (last visited January 3, 2020). The six ADLs are the ability to "to independently eat, dress, walk or transfer from one position to another, bathe, and toilet, and maintaining bowel and bladder continence." (*Id.*)

[3] Agoraphobia is the "marked fear of leaving the familiar setting of the home." Department of Psychiatry and Behavior Sciences, *Glossary*, University of Washington School of Medicine, https://depts.washington.edu/psyclerk/glossary.html (last visited January 3, 2020)

Dr. Charneco met with Plaintiff again on February 15, 2016. (Tr. 519–20.) In the mental status exam, Dr. Charneco made the following findings:

> General appearance: casually dressed; interpersonal relation (behavior): calm, cooperative; psychomotor activity: normal; speech and language: clear, appropriate; mood: anxious, depressed; affect: normal; thought process: clear; delusions: no delusions elicited; hallucinations: visual, auditory; suicidal: denies; homicidal: denies; sensorium (Consciousness): alert; orientation: person, time, place; attention: intact; memory: intact; estimate of intelligence (cognition): average; insight: good; judgment: good; Plaintiff's capacity to do ADLs: good; attitude toward treatment: cooperative.

(Tr. 520) altered for formatting). Dr. Charneco also diagnosed Plaintiff with major depressive disorder, anxiety disorder, and panic disorder without agoraphobia. (*Id.*)

Plaintiff's last documented appointment with Dr. Charneco was on June 14, 2016. (Tr. 522–24.) During the mental status exam, Dr. Charneco made the following findings:

> General appearance: casually dressed; interpersonal relation (behavior): calm; psychomotor activity: normal; speech and language: clear, appropriate, normal; mood: depressed; affect: congruent;[4] thought process: clear, logical; delusions: no delusions elicited; hallucinations: denies; suicidal: denies; homicidal: denies; sensorium (consciousness): alert; orientation: person, time, place; attention: intact; memory: recent; estimate of intelligence (cognition): average; insight: fair; judgment: fair; Plaintiff's capacity to do ADLs: fair; attitude toward treatment: cooperative.

(Tr. 523) (alterations in original). Dr. Charneco also diagnosed Plaintiff with major depressive disorder, anxiety disorder, and panic disorder without agoraphobia. (*Id.*)

Plaintiff argues that the ALJ erred by failing to indicate the weight he assigned to the treatment notes of Dr. Charneco as Plaintiff's treating physician. (Doc. 34 at 12.) Plaintiff posits that by not indicating the weight assigned to Dr. Charneco, "it is impossible to know how these

---

[4] "Congruent affect means that a person's emotions are appropriate for the situation . . . ." *Mental Status Examination*, Biology Dictionary, https://biologydictionary.net/euthymic/ (last visited January 3, 2020).

records were factored into the ALJ's residual functional capacity determination." (*Id.* at 16–17.) In support, Plaintiff cites to *Winschel v. Commissioner of Social Security*, 631 F.3d 1176, 1179 (11th Cir. 2011), wherein the Eleventh Circuit stated that when the ALJ fails to indicate the weight assigned to a treating physician, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. (*Id.* at 14.) In response, the Commissioner argues that the record is devoid of any opinion by Dr. Charneco regarding Plaintiff's functional abilities; instead, the cited portions of Dr. Charneco's treatment notes are written statements of Plaintiff's self-reported, subjective symptoms, not opinions. (*Id.* at 20.)

The Code of Federal Regulations defines medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527; *see also Winschel*, 631 F.3d at 1179 (finding that the treatment notes constituted a medical opinion because they included a "description of [Plaintiff's] symptoms, a diagnosis, and a judgment about the severity of [Plaintiff's] impairments"). An ALJ must assign weight to each medical opinion and the basis for the weight assignment. *Winschel*, 631 F.3d at 1179. ("[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor") (citing *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir.1987)). Failure to state the weight assigned to an opinion amounts to reversible error. *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citing *Sharfarz*, 825 F.2d at 279). Additionally, "[t]he ALJ must give a treating physician's opinion 'substantial or considerable weight unless good cause is shown to the contrary.'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (quoting *Phillips*

*v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004)). Even if the ALJ fails to apply the regulations properly, such errors are deemed harmless if the error would not contradict the ALJ's ultimate findings. *Caldwell*, 261 F. App'x at 190 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir.1983)).

While Dr. Charneco's treatment notes include a diagnosis of Plaintiff's condition and a summary of Plaintiff's self-reported symptoms, the notes do not provide the doctor's insight into Plaintiff's mental restrictions or abilities. Instead, the treatment notes memorialize Plaintiff's complaints, mental status exams, and treatment plan. (*See* Tr. 431–32, 509–23.) As such, the undersigned finds that the ALJ was not under an obligation to assign weight to the treatment notes. *See Lara v. Comm'r of Soc. Sec.*, 705 F. App'x 804, 812 (11th Cir. 2017) ("[A]t least some of the records contain no judgments about the nature and severity of [Plaintiff's] impairments and thus do not contain opinions."); *Duarte v. Comm'r of Soc. Sec.*, No. 8:15-cv-1465-T-36TBM, 2016 WL 5403413, at *5 (M.D. Fla. Sept. 28, 2016) (finding that treatment notes that listed "[the plaintiff's] subjective complaints, mental status exams, and treatment plans" did not constitute a medical opinion for which the ALJ was required to assign weight); *Williams v. Comm'r of Soc. Sec.*, No. 3:15-cv-78-J-PDB, 2016 WL 944263, at *5 (M.D. Fla. Mar. 14, 2016) (finding that the treatment notes did not constitute an opinion, despite noting the plaintiff's pain upon ambulation, because the notes never made an evaluation on the plaintiff's ability to walk).

Even if Dr. Charneco's treatment notes contained medical opinions, any failure to assign them weight would be harmless error. A review of the decision indicates that the ALJ nevertheless relied on the treatment notes of Dr. Charneco in coming to his ultimate findings. For example, the ALJ cited to the July 10, 2015 appointment notes, where Dr. Charneco states that Plaintiff's "thought pattern was clear, coherent, and goal-oriented, that her cognition was within normal

limits, and although she had poor short-term memory, her perception was clear and her insight and judgment was at least fair." (Tr. 32.) Further, the ALJ also noted that "the mental status exams of the record are mostly unremarkable, showing no major difficulties with concentration or pace." (Tr. 32.) The decision reflects that the ALJ considered Dr. Charneco's treatment notes and that the treatment notes support the ALJ's finding that Plaintiff was not disabled. As such, the undersigned recommends that the Court find that any error committed by the ALJ in failing to assign weight to Dr. Charneco's treatment notes was harmless and not grounds for remand. *See Lara*, 705 F. App'x at 812 (finding that any error in failing to assign weight to the treatments identified by the plaintiff was harmless since the ALJ considered the treatment notes and the notes were consistent with the ALJ's finding).

b. **The ALJ's Hypothetical Properly Accounted for Plaintiff's Moderate Limitation in Concentrating, Persisting, or Maintaining Pace.**

During Plaintiff's administrative hearing, the ALJ posed the following hypothetical to the Vocational Expert:

> For Hypothetical 1, please assume a person of [] [Plaintiff's] age and education with the past work [the Vocational Expert] identified. Assume that the person is limited to light work, lifting, carrying, pushing, and pulling 20 pounds occasionally, ten pounds frequently, sitting, standing and walking up to six hours each of an eight-hour day. Operation of foot controls is limited to occasional with the left lower extremity. There is no such limitation with the right lower extremity. The person can occasionally climb ladders - - no, I'm changing that. The person can occasionally climb ramps and stairs, but can never climb ladders, ropes or scaffolds. The person can frequently balance. The person is limited to occasional exposure to extreme cold, extreme heat, dust, odors, fumes, and pulmonary irritants. The person is also limited to occasional exposure to hazards such as unprotected heights and moving machinery. The person is limited to simple, routine, repetitive tasks, simple work-related decisions, and no more than occasional interaction with coworkers, supervisors and the public.

(Tr. 66–67.) The Vocational Expert found three different jobs in the national economy that Plaintiff

could perform. (Tr. 67.) The ALJ posed a second hypothetical to the ALJ that was identical to hypothetical 1, "with the addition that the person will be off task above normal breaks 10% of the time in an eight-hour workday." (*Id.*) With the additional parameters, the Vocational Expert found that there were no jobs available in the national economy for Plaintiff to perform.[5] (*Id.*)

Plaintiff argues that the hypothetical posed to the Vocational Expert did not accurately reflect the ALJ's finding that Plaintiff had moderate mental limitations. (Doc. 34 at 22.) Although the ALJ "held that [Plaintiff] had moderate limitations in maintaining concentration, persistence and pace , . . . the hypothetical . . . merely limits [Plaintiff] to performing 'simple, routine, repetitive tasks, simple work-related decisions.'" (*Id.* at 25.) In support, Plaintiff cites to *McInerney v. Commissioner of Social Security*, No. 2:15-cv-33-FtM-CM, 2016 WL 4651372, at *8 (M.D. Fla. Sept. 7, 2016). (*Id.*) wherein the court stated that if a claimant has moderate limitations in maintaining concentration persistence, and pace, the hypothetical posed to the Vocational Expert "must include, or implicitly account for, this limitation." (*Id.*)

In response, the Commissioner argues that the ALJ did account for his finding that Plaintiff had moderate limitations in maintaining concentration, persistence, and pace by including that Plaintiff is limited to simple, routine, repetitive tasks, and simple, work-related decisions in his hypothetical to the Vocational Expert. (*Id.* at 28–29.) In support, the Commissioner cites to *Jarrett v. Commissioner of Social Security*, 422 F. App'x 869, 872 n.1 (11th Cir. 2011), wherein the Eleventh Circuit found that the ALJ's hypothetical to the Vocational Expert adequately accounted

---

[5] The ALJ used similar language to describe Plaintiff's mental RFC, but he explicitly stated in his written decision that Plaintiff has a moderate limitation with regard to concentrating, persisting, or maintaining pace. (Tr. 27.) Plaintiff's RFC stated: "[Plaintiff] is limited to performing simple, routine, and repetitive tasks; she can make simple work-related decisions; and she can have occasional interaction with coworkers, supervisors, and the general public." (Tr. 29.)

for the plaintiff's mental limitations. (*Id.* at 28.)

The burden shifts to the Commissioner at the fifth step of the sequential analysis for evaluating social security eligibility. At this step, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir.2002). This can by done by posing a hypothetical to the Vocational Expert that "'comprises all of the claimant's impairments.'" *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871 (11th Cir. 2011) (quoting *Winschel*, 631 F.3d at 1180).

The language "limited to simple, routine, repetitive tasks, simple work-related decisions, and no more than occasional interaction with coworkers, supervisors and the public" adequately accounts for Plaintiff's mental limitations. In *Winschel*, the Eleventh Circuit stated that an ALJ might "adequately account for a claimant's limitations in concentration, persistence, and pace when the [hypothetical] questions otherwise implicitly account for these limitations. *Winschel*, 631 F.3d at 1180–81. The Court in *Winschel* found that the ALJ committed a reversible error because the hypothetical did not "include or otherwise implicitly account for all of the plaintiff's impairments." *Id.* at 1181.

The instant case is distinguishable from *Winschel* because the hypothetical posed to the Vocational Expert restricted Plaintiff to simple and routine tasks, which implicitly accounted for Plaintiff's moderate mental limitations. *See Jarrett*, 422 F. App'x at 872 (finding that a hypothetical restricting a claimant to "'understand, remember, [and] carry-out simple . . . tasks" accounted for the plaintiff's moderate limitations in concentration, persistence and pace); *Rivera-Hernandez v. Comm'r of Soc. Sec.*, No. 6:12-cv-198-Orl-36, 2013 WL 1104741, at *4 (M.D. Fla. Mar. 18, 2013) ("Accordingly, the ALJ was entitled to ask a hypothetical question which implicitly

accounted for [the] [p]laintiff's limitation in maintaining concentration, persistence, and pace by restricting him to simple, routine tasks."); *Dawson v. Comm'r of Soc. Sec.*, No. 6:11-cv-1128-Orl-28, 2012 WL 1624267, at *3 (M.D. Fla. May 9, 2012), *aff'd*, 528 F. App'x 975 (11th Cir. 2013) ("Despite [the plaintiff's] [mild] limitations in concentration, persistence, or pace, [the plaintiff] could perform simple, routine tasks. The ALJ sufficiently accounted for these limitations by restricting the hypothetical to "jobs involving simple, routine, repetitive tasks with up to three-step commands."). Based on the foregoing, the undersigned recommends that the Court find that the ALJ adequately accounted for Plaintiff's moderate limitations by restricting the hypothetical to simple and routine tasks.

## V. RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **AFFIRM** the Commissioner's final decision in this case; and
2. **DIRECT** the Clerk to enter judgment accordingly and **CLOSE** the file.

**NOTICE TO PARTIES**

A party has **fourteen days** from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on January 8, 2020.

EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties